DETERMINED IN THE

# COURT OF ERRORS AND APPEALS

OF THE

## STATE OF NEW JERSEY,

### AT JUNE TERM, 1875.

---

EDWARD S. TORREY AND JOSEPH TORREY, PLAINTIFFS IN ERROR, v. WILLIAM H. BURNETT ET AL., DEFENDANTS IN ERROR.

1. The right of a tenant to remove a trade fixture does not extend beyond his term or possession.
2. But such right may be extended by an agreement with the landlord.
3. A landlord agreed to sell a trade fixture for the benefit of the tenant, but failed to do so. *Held,* that the tenant had a reasonable time to remove such fixture, although his term was ended and possession surrendered.

---

In error to Supreme Court.

The facts of the case fully appear in the opinion of the court.

For the plaintiffs in error, *Jos. F. Randolph.*

For the defendants in error, *John Linn.*

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE.    This is an action on the case for an injury to the reversion.    The plaintiffs were the owners of the land, and one Isaac H. Tice was their tenant.    The defendants are creditors of Tice, and upon his leaving the state they took out an attachment, and, entering on these premises, which had been leased to their debtor, took down and carried away a steam engine, put up by him, and it is this act that forms the ground of this action.    In the damages recovered by the plaintiffs is included the value of this engine.

The contention necessary to the support of this suit is, that the engine in question had ceased to be a removable fixture, by reason of its having been left upon the premises by the tenant after his term had expired.    That the right existed to remove this article of property during the tenancy was not disputed ; as between landlord and tenant, it was a trade fixture, and was clearly removable if taken away in time.    But when the defendants levied their attachment, the term had run out, and the tenant had quitted the possession, and the argument, founded on these facts, was, that the right of the tenant to remove the fixture was gone, and that, after such lapse, neither he nor his creditors could lawfully enter and remove the engine.

This was the substantial question, although it was much urged on the argument that there was another ground on which the action could properly be rested.    This was, that the judgment in attachment, under which the defendants justified, was radically defective, and void.    But this defect, even if it exists, will not alone sustain the judgment in its present form.    On the assumption that the defendants are naked trespassers, the plaintiffs cannot recover of them damages for the taking away of this engine, unless, at the time of such taking, it was a part of the land.    This results from the capacity in which the plaintiffs sue ; they were not in possession at the time of the injury complained of, and they have necessarily sued as reversioners.    Standing in such capacity on the record, the damages for which the wrongdoer is an-

swerable to them are such only as are of a permanent nature, so that a mere wrongful entry upon the land and the removal of a chattel, could not form a foundation of this suit. Very plainly, to uphold their case, the plaintiffs must show the steam engine in question had become incorporated with the land, so as to be parcel of it.

Was this the case? I have said that this fixture, during the running of the tenancy, was removable. But the term in the land had expired, and the tenant had left the property, when this entry and taking occurred. It is undoubtedly the settled rule of law, that where a tenant has the right to remove fixtures, he must exercise his right during the continuance of his term, or before he surrenders the possession of the premises; he cannot re-enter for such purpose. A multitude of cases have been decided in accordance with this doctrine, many of which can be found by a reference to the notes to the case of *Elwes* v. *Mawe*, 2 *Smith's Lead. Cas.* 228. And it was in submission to this rule that the judge, at the trial in the present case, instructed the jury adversely to the defence. Such instruction would have been incontestably correct if there had been no other conditions of the case than those already specified. But such was not the fact. There was evidence tending to show that before the defendants had altogether yielded up the possession of the premises, in a conversation with one of the plaintiffs, it was understood that the plaintiffs would endeavor to sell for the defendants this steam engine, to a person who was then in treaty for the purchase of the land. Looking at the whole of the testimony on this subject, it is, perhaps, a fair conclusion that the tenant failed to remove the engine in consequence of this arrangement. Upon the assumption that such an undertaking on the part of the landlords existed, I can have no doubt that its effect is to debar them from claiming that the chattel in question became theirs as an unremovable fixture, by reason of the surrendering up of the possession of the premises. For a landlord to claim a chattel affixed to the land, on the ground that the tenant had failed to remove it while in possession, when such

failure had been occasioned by his own promise to sell the fixture for the benefit of the tenant, would, in morals, be a sheer fraud, and the general legal principle above stated is not so inflexible that it is to be so applied as to render such an attempt, when made, successful. The reason upon which the rule itself rests is totally opposed to such an application of its control. The rule, in the rigor of its generality, is derived from the Year Book, 20 *Henry VII*, in which, speaking of the tenant, it is said: "During his term he may remove them, but if he suffer them to remain fixed after the term, they belong to the lessor." This is a bold statement of the law, without any reference to its spirit; but in *Poole's Case*, 1 *Salk.* 368, Lord Holt reached the heart of the subject by saying: "After the term, they [the fixtures] become a gift in law to him in reversion, and are not removable." The same groundwork for the rule is indicated by Lord Kenyon, in *Penton* v. *Robart*, 2 *East.* 88, in which the stringency of the principle was somewhat relaxed, it being decided that a tenant remaining in possession after the end of his term could take away removable fixtures. The reason assigned for this mitigation of the severity of the rule is, that as the tenant remained in possession at the time of the taking away of the fixtures, there was no pretence to say that he had abandoned his right to them.

It would seem to be clear that, in the view of these great common law judges, the landlord's right to the removable fixtures originated in an implied gift on the part of the tenant, such implication arising from the fact that the tenant, at the end of his term, abandoned the property without removing them. Such presumption is undoubtedly a presumption of law, and how far it is liable to be rebutted has not been entirely defined. In the valuable note of Mr. Smith, in his volume of Leading Cases already referred to, it is said, in treating of the possibility of overcoming this legal presumption, "it has never been determined what might be the effect of a formal declaration of the tenant, on quitting, that he did not

intend to give them to his landlord. It would, however, probably be held inoperative, on the principles explained in *Marston* v. *Roe*, 8 *A. & E.* 59." This inference, that the notification by the tenant of a reservation of his right, would be inefficacious, I have little doubt would be sustained if ever a case should arise, presenting the precise point for decision, as it would seem utterly inconsistent with all legal science to permit a man to reserve a right which involves, in its enjoyment, a plain trespass to the property of another. But while this seems to me clear, I think it is equally so that this legal presumption of a gift may be repelled by proof of the assent of the landlord to the retention by the tenant of his right of removal. In my opinion, if the landlord should say to the tenant that he should have a certain time within which to remove his fixtures, such a license would be valid, and would prevent, for the time being, the incorporation of the fixtures into the land. Such stipulations as those are common in leases, and in that form have been frequently enforced by judicial action. As the fixture is a chattel, such arrangements need not be in writing, and they can arise by implication as well as by express agreement.

It is upon this ground that I think this judgment should be reversed. The agreement on the part of the landlords to endeavor to effect a sale of the fixture for the benefit of the tenant, carried with it an implied permission that it might be removed if such endeavor proved to be unsuccessful. Such arrangement, of necessity, involved the fact that the tenant did not intend to abandon the fixture to the landlord, and it is quite unreasonable to suppose that such an abandonment was meant in case a sale was not effected. The engine was left on the property for a specific purpose, and with the assent of the land-owner; such purpose having failed, the tenant did not lose his property, but was entitled to remove it within a reasonable time. Under these circumstances, it is impossible to consider the chattel in question as a part of the realty, or that its removal worked an injury to the reversioner. The

facts should have been left to the jury, with instructions as to the law, in accordance with the foregoing view.

The judgment must be reversed.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, DEPUE, REED, SCUDDER, VAN SYCKEL, WOODHULL, CLEMENT, DODD, GREEN, LILLY, WALES—12.